UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSEPH KUBERSKI, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 1:15-cv-00320-RL-SLC |
| ALLIED RECREATION GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court in this breach-of-warranty action is a motion for sanctions under Federal Rule of Civil Procedure 37(d) filed by Defendant Allied Recreation Group, Inc. ("Allied"), against Plaintiff Joseph Kuberski ("Mr. Kuberski"), seeking to recover Allied's attorney's fees and travel expenses for the December 1, 2016, deposition of Mr. Kuberski and an August 22, 2016, inspection of the recreational vehicle ("RV") at issue, together with Allied's attorney's fees for preparing the instant motion. (DE 25). Briefing on the motion, including a sur-response and a sur-reply, is now complete (DE 30; DE 39; DE 40-1; DE 45), and the motion is ripe for adjudication.

The motion was referred to the undersigned Magistrate Judge by District Judge Rudy Lozano for disposition. (DE 26). For the following reasons, Allied's motion for sanctions is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2015, Mr. Kuberski filed this breach-of-warranty suit against Allied, a supplier of RVs, alleging that the RV that he had purchased from Allied's dealer was defective

and that Allied had failed to reasonably repair the defects. (DE 1). On January 8, 2016, the Court conducted a preliminary pretrial conference, setting a discovery deadline of December 12, 2016. (DE 8). Allied moved to amend these deadlines on several occasions due to the parties' various scheduling challenges, which the Court granted, resulting in a discovery deadline of February 17, 2017. (DE 10 to DE 15; DE 17). In January 2016, Ronald Burdge ("Burdge"), counsel to Mr. Kuberski, and Bruce Terlep ("Terlep"), counsel to Allied, began attempting to schedule dates for Allied's deposition of Mr. Kuberski and for Allied's inspection of the subject RV. (DE 30-13 at 1 ¶ 2).

### A. *Mr. Kuberski's Deposition*

On February 15, 2016, Terlep noticed Mr. Kuberski's deposition for April 14, 2016, in Fayetteville, North Carolina, which was the location of Mr. Kuberski's residence set forth in his initial disclosures. (DE 25 at 2; DE 30-13 at 1 ¶ 3). Burdge, however, responded that Mr. Kuberski had moved from North Carolina to Utah.[1] (DE 30-3; DE 30-13 ¶ 3). Terlep then re-noticed the deposition for the same date, but with the location in St. George, Utah. (DE 30-4; DE 30-13 ¶ 3). Later, however, Terlep sought to reschedule the deposition; this task proved challenging, as Mr. Kuberski was unavailable during the months of May and June and both counsel also had various commitments. (DE 30-6; DE 30-13 at 2 ¶ 4; DE 39-1).

Eventually, Mr. Kuberski's deposition was scheduled for August 30, 2016, in St. George, Utah. (DE 30-12; DE 30-13 at 2 ¶ 5). On August 30, 2016, Burdge and Mr. Kuberski timely

---

[1] Some of Burdge's and Terlep's emails were sent by their respective assistants; for ease, the Court will simply refer to these emails as being from the attorneys.

appeared for the deposition at 10:00 a.m.[2]  (DE 30-4; DE 30-13 at 2 ¶ 7).  But Terlep arrived 30 minutes late, failing to appreciate the time change between Las Vegas, where the nearest airport is located, and St. George, which is a two-hour drive from the airport.  (DE 30-14; DE 39 at 6).  The deposition then commenced at 11:30 a.m.  (DE 30-13 at 2-3 ¶ 7).

During the deposition, Mr. Kuberski produced a spreadsheet of alleged defects and a written list of maladies that Mrs. Kuberski had prepared, which had not been previously produced in discovery.  (DE 25-1 at 2-6; DE 39-11; DE 39-12).  Neither Burdge, nor Terlep, was aware of this spreadsheet and list of maladies prior to the deposition.  (DE 25-1 at 2; DE 30-13 at 3 ¶ 8).  Some of the information on the spreadsheet and list of maladies had been included in another document (a Craigslist posting) that had been previously produced; however, the spreadsheet contained dates, where the previous disclosure did not.  (DE 25-1 at 3-4; DE 30-13 at 3 ¶ 8; DE 39 at 7).  Mr. Kuberski's deposition concluded at 4:00 p.m. (DE 39-13 at 2), and there is a difference of opinion as to why it concluded at that time.  Burdge claims that Terlep had to catch a return flight to Chicago.[3]  (DE 30-13 at 3 ¶ 9).  Terlep, however, asserts that it became apparent to him during the deposition that he would need to take a second trip to Utah in order to:  (1) depose Mrs. Kuberski, as Mr. Kuberski deferred to her throughout the deposition, claiming a lack of knowledge on salient issues; and (2) have an opportunity to fully digest the newly-produced spreadsheet and list of maladies, which were dense and contained new temporal

---

[2] Burdge indicates that Mr. Kuberski's wife ("Mrs. Kuberski") was also present at the August 30, 2016, deposition, but Terlep disputes this.  (DE 30-13 at 2 ¶ 7; DE 39 at 7 n.3).  The parties' dispute, however, is immaterial to the outcome of this Order.

[3] In response, Terlep submits his flight itinerary, which reflects that he had a flight the next day, August 31, 2016, not the day of the deposition, August 30, 2016.  (DE 45-1; DE 45-2).

information.[4] (DE 25-1 at 8-10; DE 39 at 7-8). Counsel's dispute about this point, however, is immaterial, as regardless of the reasons, they agreed to adjourn the deposition at 4:00 p.m. and reconvene it at a later date in conjunction with Mrs. Kuberski's deposition. (DE 39-13 at 2).

In the weeks that followed, Burdge and Terlep attempted to further schedule the depositions of Mr. and Mrs. Kuberski. (DE 30-13 at 3-4 ¶ 10). Again this was challenging due to counsel's schedules and that Burdge injured his knee and underwent surgery, which prevented him from traveling until after November 1, 2016. (DE 25 at 4; DE 25-1 at 7; DE 30-13 at 3-4 ¶ 10). In an email to Burdge on October 27, 2016, Terlep stated:

> I would suggest conducting the depositions of Mr. and Mrs. Kuberski on either December 1 or December 2. As we discussed, I would expect that we could complete both depositions in a single day. Please let me know if either of these dates work for your schedule. . . . If I do not hear back from you by November 7, I will plan to notice the Kuberskis' deposition on December 2 . . . .

(DE 25-1 at 7). Burdge did not respond to this email. (DE 25 at 5; DE 30-13 at 4 ¶ 12).

On November 8, 2016, Terlep sent another email to Burdge, attaching notices of depositions, setting the depositions of Mr. and Mrs. Kuberski for December 1, 2016, at 9:00 a.m., and 1:00 p.m., respectively, in St. George, Utah. (DE 25 at 5; DE 25-1 at 8-11). Terlep sent the email with a "receive-receipt tag" and a "read-receipt tag." (DE 39 at 8; DE 25 at 5). At 9:17 a.m. that same day, Terlep received a notice confirming that the email had been received by Burdge. (DE 25 at 5; DE 25-1 at 12, 31). He then received a read notification, indicating that Burdge had opened and read the email and attachments at 9:19 a.m. (DE 25 at 5; DE 25-1 at 13,

---

[4] Burdge contends that Mrs. Kuberski was present at the deposition location and would have been willing to be deposed that same day so that Terlep would not have to make a second trip to Utah. (DE 39 at 7 n.3). This proffered solution seems dubious, however, as it presumes that both counsel would be willing to proceed with a deposition that was not properly noticed and without any preparation.

31). Terlep did not receive any communication back from Burdge concerning the deposition notice, but Terlep did not consider this unusual, as Burdge had previously explained that it was his practice to contact opposing counsel upon receipt of a deposition notice only if there was a conflict with the noticed date. (DE 25 at 5; DE 25-1 at 14 ("When a formal deposition notice is received, if we have no scheduling problem on our end, we normally do not send a confirmation to the attorney who sent use the notice.")).

On December 1, 2016, Terlep and a court reporter appeared at 9:00 a.m. in St. George, Utah, to commence Mr. Kuberski's deposition. (DE 25 at 6). However, by 10:05 a.m., Mr. Kuberski and Burdge still had not appeared. (DE 25 at 6). Terlep contends that he then telephoned Burdge in Ohio and reached Burdge's assistant, who informed Terlep that Burdge was "on the other line" (DE 25 at 6; DE 25-1 at 32; DE 39-14 at 2); Burdge, however, denies that his office received a phone call from Terlep on the morning of December 1, 2016 (DE 30 at 8-9; DE 30-26; DE 30-27; DE 3-28).[5] In any event, it became apparent to Terlep that Burdge was still in Ohio and that the deposition would not go forward. (DE 25 at 6; DE 25-1 at 19). Terlep then made a record of the non-appearance of Mr. Kuberski and his counsel. (DE 25 at 6-7; DE 25-1 at 16-36). At 5:18 p.m., while Terlep was waiting in the Las Vegas airport to board a plane back to Chicago, Terlep emailed Burdge, inquiring why he and his client had failed to appear for the deposition. (DE 25 at 7; DE 25-1 at 37).

---

[5] Burdge contends that if Terlep had reached him, he would have tried to cause Mr. and Mrs. Kuberski to still appear and that he would have participated by telephone. (DE 30 at 13). Terlep, however, states that he told Burdge's assistant that he would wait on the line until Burdge became available, but that Burdge's assistant said that Burdge's call was going to take quite a while. (DE 39-5 at 3 ¶ 17). As a result, Terlep ended the call and proceeded to make a record of non-appearance. (DE 39-5 at 3 ¶ 17).

The next morning, December 2, 2016, Burdge sent two emails to Terlep, stating that Burdge had checked his files and with his staff, that the deposition notice had never been received, and that he was unaware of the deposition. (DE 25 at 7; DE 25-1 at 38-40; DE 30-13 at 4-5 ¶¶ 13-15). Three days later, Terlep responded to the email, asserting that Burdge was incorrect as evidenced by the "receive-receipt tag" and the "read-receipt tag" on the November 8, 2016, email transmitting the notice of deposition. (DE 39 at 8-9; DE 25 at 7; DE 39-19).

The depositions of Mr. and Mrs. Kuberski were later rescheduled per agreement of counsel and were completed on January 23, 2017. (DE 30-13 at 5-6 ¶ 17).

*B. The RV Inspection*

On June 28, 2016, Terlep, having learned that Mr. Kuberski had moved from North Carolina to Utah, noticed Allied's inspection of the subject RV for August 23, 2016, at Camping World of St. George, Utah. (DE 25 at 7; DE 30-8). Burdge responded that although Mr. Kuberski had moved to Utah, the RV remained in North Carolina. (DE 30-9 at 1). Terlep then re-noticed the RV inspection for one day earlier, August 22, 2016, at Camping World in Fayetteville, North Carolina, as the dealership had an appropriate service bay and diagnostic tools necessary to conduct a meaningful inspection. (DE 25 at 8; DE 25-1 at 42; DE 30-10). Burdge responded, however, that the RV was located in a rural location in Cameron, North Carolina, about 40 miles from Fayetteville, and that Mr. Kuberski would not agree to transport the RV to the Fayetteville dealership for purposes of Allied's inspection. (DE 25 at 8; DE 25-1 at 41-42). Given that Mr. Kuberski would not agree to transport the RV, Allied re-noticed the deposition for August 22, 2016, in Cameron. (DE 30-11). Although Allied contends that it was

6

"universally understood" that the RV would need to be driven as part of its inspection process,[6] Allied did not include this provision—or anything about the RV's license plates and registration—in the deposition notice. (DE 39-5 at 1 ¶ 2; DE 25-1 at 42).

On August 22, 2016, Douglas Haas, Allied's expert witness; David Matzenger, an Allied representative; and Terlep traveled to Cameron to complete the RV inspection. (DE 25 at 9). Burdge was also in attendance. (DE 30-13 at 2 ¶ 6). Unbeknownst to Burdge, Mr. Kuberski had allowed the RV's license plates and registration to expire, preventing Allied from conducting a test drive of the RV and from transporting it to Fayetteville for inspection with certain diagnostic tools. (DE 25 at 9; DE 25-1 at 20-22; DE 39 at 4-5). Burdge suggested that Terlep contact its local dealer to obtain a temporary dealer tag; Terlep did so, but the dealer would not loan out a tag, explaining that it was illegal to do so. (DE 30-13 at 2 ¶ 6; DE 30 at 5; DE 39-6). Consequently, the parties agreed to continue the inspection to a later date after Mr. Kuberski had obtained the proper license plates and registration. (DE 30-13 at 2 ¶ 6). Terlep told Burdge at the time that Allied would not seek reimbursement for its travel expenses and time for the August 22, 2016, inspection. (DE 30-13 at 2 ¶ 6; DE 25-1 at 22). Terlep later confirmed this in his Statement of Nonappearance on December 1, 2016, stating: "I advised Mr. Burdge that defendant would not seek its costs and fees that it unnecessarily had to incur for that first [inspection] trip, but that we would simply reschedule, because, obviously, things can happen that might be out of someone's knowledge or simply fall through the cracks." (DE 25-1 at 22).

---

[6] In April 2016, the RV was inspected by Mr. Kuberski's expert, Phillip Grismer, who opined that the RV exhibited various defects that were evident only when driving the RV. (DE 25 at 8-9; DE 39-9). As part of his inspection, Grismer drove the RV, which then had valid license plates and registration. (DE 25 at 8-9). This inspection occurred without notice to Allied, and thus, neither Terlep nor anyone from Allied attended that inspection. (DE 25 at 9 n.5).

7

In the following months, counsel attempted to reschedule the RV inspection. (DE 25 at 9). The inspection was first rescheduled for November 2, 2016, but was cancelled due to the poor condition of the roads around Fayetteville following a recent hurricane. (DE 25-1 at 7). Eventually, the inspection was completed on December 14, 2016, at which time the RV had valid license plates and registration, and Allied's expert was able to test drive and transport the RV to the Fayetteville dealership for diagnostic testing. (DE 25 at 9; DE 30-13 at 5 ¶ 16).

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 37(d)(1)(A) provides that the court "may, on motion, order sanctions if: (i) a party . . . fails, after being served with proper notice, to appear for that person's deposition; or (ii) a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response." As to types of sanctions, Rule 37(d) provides:

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d)(3) (emphasis added).

## III. ANALYSIS

Allied requests that Mr. Kuberski be sanctioned for failing to appear for his December 1, 2016, deposition, and for failing to produce the subject RV for a meaningful inspection on August 22, 2016. Allied seeks its reasonable attorney's fees and travel expenses in relation to the two events, plus its attorney's fees in preparing the instant motion, but no other sanctions.

8

Mr. Kuberski opposes Allied's motion, offering several arguments why sanctions are not warranted under the circumstances presented. Ultimately, Mr. Kuberski's arguments in opposition to sanctions are persuasive with respect to the August 22, 2016, inspection, but not as to the December 1, 2016, deposition.

*A. Sanctions Will Be Imposed as a Result of Mr. Kuberski's Non-Appearance for His Deposition on December 1, 2016*

Mr. Kuberski offers three reasons why sanctions should not be imposed for his failure to appear at the December 1, 2016, deposition: (1) Allied failed to properly serve the notice of deposition pursuant to Federal Rule of Civil Procedure 5; (2) neither Mr. Kuberski nor Burdge had actual knowledge of the December 1, 2016, deposition; and (3) a second deposition of Mr. Kuberski was not necessary. The Court will address each of these arguments in turn.

Mr. Kuberski first argues that Allied did not properly serve the notice of deposition because he served the deposition notice by email and no other means. While he acknowledges that Rule 5(b)(2) authorizes service by "sending it by electronic means if the person consented in writing," Fed. R. Civ. P. 5(b)(2), he contends that he never expressly agreed in writing to electronic service. Allied argues, however, that Mr. Kuberski consented to electronic service when Burdge: (1) registered for the CM/ECF filing system used by this Court; and (2) stated in an email to Terlep on May 17, 2016, that he would accept discovery requests via email (DE 39-16).

The CM/ECF provision that Allied points to is Section I(B)(3) of the CM/ECF Civil and Criminal User Manual ("the "CM/ECF Manual"), which provides: "An attorney's registration will constitute a waiver of conventional service of documents and the attorney agrees to accept

9

service of notice on behalf of the client of the electronic filing by hand, facsimile or authorized e-mail." Mr. Kuberski contends, however, that the CM/ECF Manual pertains only to documents that are *filed* electronically, not to documents that are not filed in the record, such as discovery requests, disclosures, and deposition notices.[7] *See* N.D. Ind. L.R. 26-2 (instructing that discovery requests and related documents are not filed, except in cases involving a pro se party). Consequently, as Mr. Kuberski sees it, because discovery documents are not filed, they must instead be served in accordance with the federal civil and local rules.[8]

Mr. Kuberski's parsing of the CM/ECF Manual language, however, is not persuasive. The proffered statement in the CM/ECF Manual is written broadly; if this Court intended to carve out electronic service for discovery, the Court likely would have explicitly said so in either its CM/ECF registration document, the CM/ECF Manual, or this Court's local rules.

In any event, aside from Burdge's CM/ECF registration, there is other evidence that Burdge explicitly consented to receive service of discovery by electronic means. In an email to Terlep on May 17, 2016, Burdge stated: "Please email us a Word or WordPerfect version of the discovery so we may insert the responses from our client. *You may always serve discovery on my office via email if you wish*, in addition to ordinary mail, as it will speed up the process on our end." (DE 39-16 (emphasis added)). Allied asserts that this statement by Burdge satisfies the

---

[7] In particular, Mr. Kuberski points to Local Rule 5.2, which states: "A person registered to use the court's electronic-filing system is served with an electronically filed paper when a 'Notice of Electronic Filing' is transmitted to that person through the court's electronic-filing system." N.D. Ind. L.R. 5-2(b). He argues that because he never received a "Notice of Electronic Filing" from the CM/ECF system for the notice of deposition, he was not properly served.

[8] Notably, however, Mr. Kuberski's initial disclosures were served by his counsel on January 26, 2016, *solely* by email. (DE 45-3).

10

written consent to electronic service requirement of Rule 5(b)(2)(E).

Mr. Kuberski urges a different interpretation of Burdge's email. He contends that Burdge's statement was not a consent to electronic service of discovery as the sole means of service, but rather, it was a consent to electronic service as an *additional* means of service of discovery. (DE 40-1 at 5). But Mr. Kuberski's proffered interpretation does not make sense, as there is no need to serve an opposing party with discovery via two methods. The more logical interpretation of Burdge's email is that he was consenting to service either by email *or* by ordinary mail. Consequently, the Court finds that Burdge's email dated May 17, 2016, satisfies the written consent to electronic service required by Rule 5(b)(2)(E).

Having concluded that Burdge did consent in writing to electronic service of discovery, Mr. Kuberski fails to dispute the evidence that the notice of deposition was, in fact, emailed to and received by Burdge. Although Burdge and his staff have no recall of the email, the electronic "receive-receipt tag" and the "read-receipt tag" offered by Allied overcome that denial. In light of this evidence, the Court concludes that Allied properly served notice to Mr. Kuberski of his deposition on December 1, 2016.

Having found that Allied did, in fact, serve Mr. Kuberski with proper notice of the December 1, 2016, deposition, the Court finds that Mr. Kuberski's second argument—that he had no actual knowledge of the notice of deposition based on Terlep's October 27, 2016 email discussing the proposed deposition dates—is moot. As to Mr. Kuberski's third argument asserting that a second deposition of Mr. Kuberski was unnecessary, that too is a nonstarter. It is undisputed that the parties agreed at the close of Mr. Kuberski's first deposition on August 30, 2016, to continue the deposition to another date when Mrs. Kuberski could also be deposed.

(DE 30-15 at 6). As such, whether the additional deposition of Mr. Kuberski was necessary is irrelevant; the parties agreed to reconvening the deposition, Fed. R. Civ. P. 30(a)(2)(A)(ii); the December 1, 2016, deposition was properly noticed; and Mr. Kuberski was obligated to appear.

As explained above, under Rule 37(d)(3), the Court "*must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3) (emphasis added); *see Knowledge A-Z, Inc. v. Jim Walter Res., Inc.*, No. 1:05CV1019RLY-WTL, 2008 WL 2600167, at *1 (S.D. Ind. June 25, 2008) ("Indeed, the sanctions sought by [the defendant]—reimbursement of its expenses—are not only appropriate; they are made virtually mandatory by Rule 37(d)(3)."). Because Mr. Kuberski's non-appearance at the December 1, 2016, deposition was not substantially justified, and because the Court notes no other circumstances that make an award of expenses unjust, Allied's motion to the extent it seeks sanctions of its attorney's fees and travel expenses for Mr. Kuberski's deposition on December 1, 2016, will be GRANTED.

### B. Sanctions Will Not Be Imposed as a Result of the RV Inspection on August 22, 2016

Allied also seeks sanctions for the RV inspection on August 22, 2016, based on Mr. Kuberski's failure to maintain the RV's license plates and registration, which prevented Allied's expert from being able to test drive the RV and transport it to Fayetteville for diagnostic testing, causing Allied to make a second trip to North Carolina. Mr. Kuberski opposes the motion, asserting that: (1) Allied did not properly serve him with notice of the inspection; (2) his inadvertence in failing to maintain the RV's license plates and registration satisfies the

12

"substantially justified" exception of Rule 37(d)(3); and (3) Terlep told Burdge at the inspection that Allied would not seek its costs and fees. The Court will consider each of these arguments in turn.

Mr. Kuberski first argues that Allied served the notice of inspection solely via email and that such electronic service of the notice of inspection is ineffective. The Court has already discussed the parties' arguments concerning electronic service of discovery in the context of Mr. Kuberski's deposition and concluded in Allied's favor; that discussion will not be repeated here. In any event, Burdge appeared for the RV inspection on August 22, 2016, and did not object to the inspection. Therefore, Mr. Kuberski's first argument in opposition to the motion for sanctions is unpersuasive.

Next, Mr. Kuberski emphasizes that he never refused the August 22, 2016, inspection. Although Allied's expert could not test drive the RV or transport it to the Fayetteville dealership for further inspection due to the lack of valid license plates and registration, Allied's expert *did* have the opportunity to inspect the RV the entire day and to take numerous photographs. Therefore, as Mr. Kuberski sees it, the August 22, 2016, inspection was not meaningless. Mr. Kuberski characterizes his failure to maintain the RV's license plates and registration as "a simple oversight," considering that he had moved out of state, parked the RV on a storage lot, and stopped using the RV. (DE 30 at 16). Given these circumstances, Mr. Kuberski urges that his failure to maintain the RV's license plates and registration was "substantially justified," and thus, that the circumstances do not warrant sanctions under Rule 37(d). *See Schofield v. U.S. Steel Corp.*, No. 2:04-CV-520-PRC, 2005 WL 3093483, at *5 (N.D. Ind. Nov. 18, 2005) ("Substantially justified does not mean justified to a high degree, but rather justified in substance

13

or in the main—that is, justified to a degree that could satisfy a reasonable person." (citation and internal quotation marks omitted)).

The Court is persuaded that Mr. Kuberski's failure to maintain the RV's license plates and registration satisfies the "substantially justified" exception of Rule 37(d). While it may have been "universally understood" that Allied needed to drive the RV for the inspection (DE 39-5 at 1 ¶ 3), Allied did not state this condition on its notice of inspection. Nor did the notice of inspection state anything about producing the RV with current license plates and registration. Moreover, this is not a circumstance where Mr. Kuberski failed to respond to an inspection notice, refused the inspection, or otherwise withheld access to the RV. *See Schofield v. U.S. Steel Corp.*, 2005 WL 3093483, at *5 (denying Rule 37(d) sanctions where the defendant attempted to comply with the plaintiff's inspection request). Thus, Mr. Kuberski did not fail to respond to a request for an inspection as Rule 37(d) sanctions require. *See, e.g.*, *Alexander v. F.B.I.*, 186 F.R.D. 6, 10 (D.C. 1998) (collecting cases that denied a request for Rule 37(d) sanctions where the party responded to the inspection request, although the response was not satisfactory).

Furthermore, Terlep told Burdge at the inspection on August 22, 2016, that Allied would not seek attorney's fees and expenses relating to Mr. Kuberski's oversight. Allied suggests that Terlep made this statement in the context of prospective mediation—that is, if the case settled at the mediation, then recovery of attorney's fees and expenses would not matter. (DE 39 at 6 ("With mediation in mind, what Defense counsel said, while standing in the woods in Cameron, was something to the effect: that if the case settled at mediation, no worries; this won't matter.")). However, the record does not support Allied's assertion. Rather, in his Statement of

Non-Appearance recorded on December 1, 2016, Terlep relates that he told Burdge that Allied "would not seek its costs and fees," as "things can happen that might be out of someone's knowledge or simply fall through the cracks"; notably, there is no mention of mediation in his statement. (DE 25-1 at 22). Allied's attempt to re-characterize Terlep's statement after the fact is simply not convincing.

In sum, because Mr. Kuberski did produce the RV on August 22, 2016, in accordance with Allied's notice of inspection, and because Allied's inspection notice did not specify any conditions pertaining to the RV, such as having valid license plates and registration, the Court finds that sanctions are not warranted against Mr. Kuberski under Rule 37(d) for the inspection. Therefore, Allied's motion to the extent it seeks sanctions in the amount of its reasonable attorney's fees and expenses for the August 22, 2016, inspection will be DENIED.

*C. Sanctions in the Amount of $8,247.20 Will Be Imposed*

Allied produces its counsel's affidavit evidencing that it incurred: (1) $4,536.00 in attorney's fees and $699.20 in travel expenses for the December 1, 2016, deposition; and (2) . $6,024.00 in attorney's fees for preparing the instant motion. (DE 25-1 at 43-45 ¶¶ 2-11; DE 39-18 at 2 ¶ 9; DE 45-1). Mr. Kuberski does not challenge the reasonableness of Allied's attorney's fees or travel expenses. Because the Court denied Allied's motion for sanctions with respect to the inspection, Allied's attorney's fees for preparing the instant motion will be reduced by 50 percent.

Accordingly, Allied's motion for sanctions pursuant to Rule 37(d) will be GRANTED IN PART in the amount of $8,247.20 in attorney's fees and travel expenses, but will otherwise be DENIED. Because Burdge appears to be the one responsible for the failure to appear at the

15

deposition, not Mr. Kuberski, the sanctions are to be paid by Burdge.  *See* Fed. R. Civ. P. 37(d)(3) (stating that "the court must require the party failing to act, *the attorney advising that party*, or both to pay the reasonable expenses, including attorney's fees" (emphasis added)).

## IV.  CONCLUSION

For the foregoing reasons, Allied's motion for sanctions pursuant to Rule 37(d) (DE 25) is GRANTED IN PART in that sanctions in the amount of $8,247.20 in attorney's fees and travel expenses are awarded in Allied's favor; the motion is OTHERWISE DENIED.  The sanctions are to be paid to Allied by Attorney Burdge on or before October 3, 2017.

SO ORDERED.

Entered this 3rd day of August 2017.

/s/ Susan Collins  
Susan Collins,  
United States Magistrate Judge