## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **JOSEPH KUBERSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:15-cv-320-RL-SLC** |
| | ) | |
| **ALLIED RECREATION GROUP, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Joseph Kuberski brings this breach-of-warranty action against Defendant Allied Recreation Group, Inc. ("Allied"), alleging that the recreational vehicle he purchased from Allied's dealer was defective and that Allied had failed to reasonably repair the defects. Now before the Court are the parties' respective motions to preclude the other's proffered expert from testifying. Specifically, Allied seeks to bar the testimony of Phillip Grismer, Kuberski's expert witness (DE 31), and Kuberski seeks to bar the testimony of Douglas Haas, Allied's expert witness (DE 34). The two motions are fully briefed. (DE 32; DE 35; DE 46; DE 47; DE 51; DE 59).

District Judge Rudy Lozano entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1(b), referring the motions to the undersigned Magistrate Judge for the issuance of a report and recommendation. (DE 42). Having considered the motions, I will recommend that Allied's motion to bar Grismer's testimony be DENIED, and that Kuberski's motion to bar Haas's testimony be GRANTED IN PART and DENIED IN PART.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Kuberski purchased from one of Allied's dealers a 2013 Fleetwood Storm Class A recreational vehicle ("the Subject RV") that was manufactured by Allied.  (DE 1 ¶¶ 6, 8-9, 13).  On November 3, 2015, Kuberski filed the instant case against Allied (who according to the complaint does business as Fleetwood RV), alleging that the Subject RV was defective and that Allied had failed to reasonably repair the defects.  (DE 1 ¶¶ 8, 9).  Kuberski advances claims for breach of express or implied warranties under the Indiana or North Carolina Uniform Commercial Code, violation of the Magnuson-Moss Warranty Act, and violation of applicable Unfair and Deceptive Acts and Practices statutes of Indiana or North Carolina.  (DE 1 ¶¶ 6-39).

On January 8, 2016, the Court conducted a Rule 16 preliminary pretrial conference, setting the following deadlines:  January 29, 2016, for Rule 26(a)(1) initial disclosures; February 5, 2016, for any amendments to the pleadings; June 10, 2016, for Rule 26(a)(2) expert disclosures by Kuberski; July 11, 2016, for Rule 26(a)(2) expert disclosures by Allied; July 24, 2016, for Rule 26(e) supplements; and December 12, 2016, for the completion of all discovery. (DE 7; DE 8).  On May 9, 2016, Allied moved to extend its expert disclosure deadlines, which the Court granted, extending them as follows:  December 9, 2016, for Allied's Rule 26(a)(2) expert disclosures; December 23, 2016, for Rule 26(e) supplements; and January 13, 2017, for the completion of all expert depositions and discovery.  (AR 13; DE 14).  Then, on October 26, 2017, the parties jointly moved to amend the expert disclosure deadlines, which the Court granted, further extending them as follows:  January 9, 2017, for Allied's Rule 26(a)(2) expert disclosures; January 23, 2017, for Rule 26(e) supplements; and February 17, 2017, for the

completion of all expert depositions and discovery.  (DE 15; DE 17).

On March 23, 2017, Allied filed its motion to exclude the testimony of Grismer, Kuberski's expert witness (DE 31), and Kuberski filed its motion to exclude the testimony of Haas, Allied's expert witness (DE 34).  On May 8, 2017, Kuberski filed a request for an evidentiary hearing on Allied's motion to bar Grismer.[1]  (DE 52).

## II.  APPLICABLE LAW

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, *Daubert*, 509 U.S. 579, and its progeny.  *See Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007).  Rule 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*Daubert* requires a district court to exercise a "gatekeeping" function to ensure that

---

[1] Kuberski's motion requesting an evidentiary hearing on Allied's motion to exclude Grismer's testimony will be denied.  A district court enjoys wide latitude in performing its gatekeeping function and deciding how to determine the reliability of an expert's testimony.  *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).  Here, the record was sufficient to allow the Court to perform its gatekeeping function and decide the issues in Allied's motion without an evidentiary hearing.  *See Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998) (finding that nothing in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), required district courts to conduct *in limine* hearings concerning every proffer of expert testimony and that a hearing was not necessary when the district court had the expert's report and all the documents upon which the report drew before it and the movant did not indicate what missing information a hearing would supply); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067-68 (7th Cir. 1998) (holding that "the district court had a sufficient basis for her decision without holding a hearing" and that "[w]e have not required that the *Daubert* inquiry take any specific form"); *Mitchell v. Iowa Interstate RR Ltd.*, No. 07-1351, 2010 WL 2179715, at *3 (C.D. Ill. May 26, 2010) (finding that a *Daubert* hearing was not required where the record was more than adequate to conduct a *Daubert* examination without a hearing); *Olinger v. U.S. Golf Ass'n*, 52 F. Supp. 2d 947, 948 (N.D. Ind. 1999) (same).

expert testimony is both reliable and relevant pursuant to Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010); *see generally Daubert*, 509 U.S. at 589-92; *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006); *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003). This inquiry applies not only to scientific testimony, "but to all kinds of expert testimony." *United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) (noting that Rule 702 "makes no distinction between 'scientific' knowledge and other forms of specialized knowledge" (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 149)). The fundamental purpose of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152.

According to the Seventh Circuit Court of Appeals, to gauge reliability, "the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd.*, 526 U.S. at 153). When determining whether an expert is qualified, a court should consider the expert's "full range of practical experience as well as academic or technical training . . . ." *Trs. of Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 788 (7th Cir. 2007) (quoting *Smith*, 215 F.3d at 718). Nevertheless, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter. . . . [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." *Smith*, 215 F.3d at 718; *see also Winters*, 498 F.3d at 742. Accordingly, "[an] expert['s] work is admissible only to the extent it

4

is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). A court's focus must be solely on the principles and methodology the expert used and not on the conclusions generated. *Winters*, 498 F.3d at 742; *see also Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . ." (citations omitted)).

Specifically, *Daubert* outlined the following, non-exhaustive factors to guide district courts in assessing an expert's methodology:

> (1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community.

*Bielskis*, 663 F.3d at 894 (citing *Daubert*, 509 U.S. at 593-94). At the same time, this inquiry is fact-dependent and flexible; the district court is given "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (quoting *Bielskis*, 663 F.3d at 894).

But even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant, which means under Rule 702 that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996) (quoting *Daubert*, 509 U.S. at 592); *see also United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007). Stated another way, "the suggested . . . testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (quoting

*Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir. 1993)). If the proposed expert

testimony satisfies the *Daubert* threshold of both relevance and reliability, "the accuracy of the

actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof.'"

*Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596). "The burden of showing an

expert's testimony to be relevant and reliable is with the proponent of the evidence." *Bickel v.

Pfizer, Inc.*, 431 F. Supp. 2d 918, 921 (N.D. Ind. 2006) (citation omitted).

Moreover, when determining whether an expert's testimony is admissible, "[i]t is critical

under Rule 702 that there be a link between the facts or data the expert has worked with and the

conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d

475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997)). As the Supreme

Court wrote: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district

court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert." *Gen. Elec.*, 522 U.S. at 146. Stated another way, an expert "who invokes 'my

expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702

defines that term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005);

*see also Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it

is given by an expert." (citation omitted)). Indeed, the Seventh Circuit has consistently held that

"[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial

process." *Zenith Elec. Corp.*, 395 F.3d at 419-20 (collecting cases).

### III.  ALLIED'S MOTION TO EXCLUDE GRISMER'S TESTIMONY

Allied asserts that to the extent that Grismer possesses any expertise, it is limited to

automobiles.  (DE 32 at 4).  As such, Allied contends that Grismer's opinions relating to the

"house" portion of the Subject RV should be excluded, arguing that he lacks the appropriate

education, experience, knowledge, skill or training with respect to the house portion of

recreational vehicles ("RV" or "RVs").[2]  Allied also asserts that Grismer is not qualified to opine

about the valuation of the Subject RV and that his valuation testimony is based on nothing more

than speculation.  Ultimately, Allied's attack on Grismer's qualifications and methodology do

not necessitate the exclusion of Grismer's testimony.

### A.  Grismer's Experience and Credentials

Grismer's experience and credentials are summarized as follows:  From the age of 10,

Grismer has been involved in the construction, repair, and remodeling of houses, and for the past

five years, he has personally maintained and repaired his own RV.  (DE 47-1 ¶¶ 4, 6, 7).

Grismer has a Bachelor of Arts in Business Administration from Kensington University of

Glendale, California.[3]  (DE 33-1 at 2; DE 47-3 at 2).  Since 1994, he has been the sole owner and

employee of PJG Consulting and Appraisal; in that capacity, he has inspected and appraised

automobiles, boats, motorcycles, snowmobiles, and RVs.  (DE 47-4 at 3).  Specifically, Grismer

inspects class A, B, and C motor homes and towable RVs of all sizes for extended service

contract companies covering such units, and he issues reports after the inspections upon which

claim coverage decisions are made.  (DE 47-1 ¶ 8).  In total, Grismer has inspected more than

150 RVs in this capacity.  (DE 47-1 ¶¶ 8, 10).  Grismer represents that the majority of the

---

[2] The Subject RV has two separate written warranties.  One is issued by Ford Motor Company and covers the automotive/chassis components.  The other is issued by Allied and covers the "house" or "coach" portion of the Subject RV, which includes, for example, the plumbing, carpentry, structure, and house electrical.  (DE 32 at 1).

[3] Kensington University of Glendale, California was an unaccredited, on-line study program that has since been closed by the State of California.  (DE 32 at 4 n.1)

problems or defects in these inspections occurred in the "house" portions of the RV, including slide-out function, electrical systems, and interior components, such as flooring and appliance issues.  (DE 47-1 ¶ 8).

Prior to starting PJG Consulting and Appraisal, Grismer worked as an automobile technician for 24 years, having held 24 different jobs.  (DE 47-3 at 1-2; DE 33-2 at 3).  Grismer is also a Certified member of the International Automobile Appraisers Association and a Certified Personal Property Appraiser.  (DE 47-1 ¶ 15; DE 47-3 at 1-2).  In December 2016—after he had issued his expert report in this case—Grismer became a certified RV inspector by the National Recreational Vehicle Inspectors Association, having participated in an on-line course and passed two written exams.  (DE 47-1 ¶ 13).

### B. Grismer's Opinions About the House Portion of the Subject RV

In challenging Grismer's expertise, Allied points out that Grismer is not an engineer, electrician, plumber, or carpenter; he has never worked for an RV manufacturer or visited an RV manufacturer's premises; he has never been hired to repair an RV or had any training in the repair of the house-portion of an RV; he is not familiar with trade publications regarding RV manufacturing or repair, does not know the names of any entity that publishes standards or regulations concerning the manufacture of RVs, and is not a member of an RV industry association; and he has never been involved in the sale of an RV.  (DE 32 at 5-7).  Allied argues that while Grismer has served as an expert in cases involving RVs, his testimony in those cases involved the chassis (automotive) aspects of the RV, not the house portion.  (DE 32 at 7).  As such, Allied contends that Grismer lacks the requisite qualifications, experience, skill, knowledge, and training to offer reliable opinions concerning the house portion of the Subject

RV in this action.  (DE 32 at 7).

However, "[a] witness may qualify as an expert even if the opposing counsel can point to deficiencies in his or her qualifications." *Traharne v. Wayne/Scott Fetzer Co.*, 156 F. Supp. 2d 697, 706 (N.D. Ill. 2001) (citation omitted).  "The requirement that an expert be qualified by knowledge, skill, experience, education or training should not be viewed as being particularly rigorous." *Id.* (citation omitted).  Indeed, "an adequately qualified witness need not specialize in the field in which the opinion is offered." *Norwest Bank, N.A. v. Kmart Corp.*, No. 3:94-CV-78RM, 1997 WL 33479072, at *2 (N.D. Ind. Jan. 29, 1997) (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 783 (3d Cir. 1996)); *see also Alexander v. Mount Sinai Hosp. Med. Ctr. of Chi.*, No. 00 C 2907, 2005 WL 3710369, at *4 (N.D. Ill. Jan. 14, 2015) ("[C]ourts have not required a party to show that the witness is an outstanding expert, or to show that the witness is well-known or respected in the field; these are generally questions of weight." (citing Fed. R. Evid. 702 advisory committee's note)); *Dairyland Power Coop. v. United States*, No. 04-106 C, 2008 WL 5122339, at *10 (Fed. Cl. June 20, 2008) ("An expert need only be qualified and need not be the best and the brightest for testimony to be admissible." (citation omitted)).

Here, it is significant that Grismer has inspected more than 150 RVs in the past 24 years in his work as the sole employee and owner of PJG Consulting and Appraisal.  In doing so, Grismer represents that he issued opinions as to "condition, cause, and effect" for purposes of damage claims.  (DE 33-3 at 3; *see also* DE 47-1 at 2).  Grismer indicates that of the 150 RVs that he inspected, "[t]he majority of the failure defect conditions occur in the 'house' or coach portions of the unit," including the "slide out function, electrical systems, [and] interior components, such as flooring and appliance issues."  (DE 47-1 at 2).

Grismer's experience in this respect distinguishes him from the expert in the purportedly analogous case cited by Allied, *Teerling v. Fleetwood Motor Homes of Indiana, Inc.*, No. 99 C 5926, 2001 WL 641337 (D. Ariz. May 19, 2004).  Like Grismer, Thomas Walters, the expert in *Teerling*, had expertise in auto mechanics, but he had never worked for an RV manufacturer, attended any training on the repair or maintenance of RVs, subscribed to any RV industry publications, or been involved in the design or manufacture of RVs.  *Id*. at *2.  However, that is where the similarities between Grismer and Walters end.  Walters did not own his own RV, and there was no dispute that Teerling's RV was the first one that Walters had ever inspected.  *Id*. at *2.  In contrast, Grismer owns his own RV, performs repairs and maintenance on that RV, and, more importantly, has inspected more than 150 RVs in his work through PJG Consulting and Appraisal.

"While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience."  *Smith*, 215 F.3d at 718 (internal citations and quotation marks omitted); *see Kumho Tire Co., Ltd.*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Conn*, 297 F.3d at 556 (stating that "genuine expertise may be based on experience or training" (citation omitted)).  Here, Grismer's 24 years of experience in inspecting RVs qualifies him to testify in the form of an expert opinion concerning the identification of problems or defects in the house portion of the Subject RV—which is, for the most part, what his expert report summarizes—and the causation of such problems or defects.

Furthermore, Grismer also has relevant lay testimony to offer gained through his first-

10

hand observations during his inspection of the Subject RV.  The Court noted this point in a similar case, *Exe v. Fleetwood RV, Inc.*, No. 1:11-CV-70-JVB-RBC, 2013 WL 474793 (N.D. Ind. Feb. 6, 2013), when considering a motion to bar the Exes' expert, John Jewell.  The Court explained in *Exe*:  "Jewell also has relevant lay testimony to offer.  In particular, whether the Exes' Revolution worked well enough to satisfy its warranty is a fact of consequence, and Jewell's first-hand observations during his inspections have some tendency to prove it. . . ."  *Id.* at *4 (citation omitted).

Moreover, Allied does not dispute that Grismer has specialized knowledge in the field of auto mechanics.  *See, e.g.*, *Finch v. Ford Motor Co.*, No. 03 C 4243, 2004 WL 2066917, at *1 (N.D. Ill. Aug. 27, 2004) (concluding that Grismer was qualified to issue expert opinions about the defects in the plaintiffs' 2002 Lincoln Navigator and the defects' causation due to his 30 years of experience repairing and inspecting a wide variety of vehicles).  Therefore, Grismer is also qualified to issue expert opinions about the Subject RV that are derived from his knowledge in the field of auto mechanics.  *See Exe*, 2013 WL 474793, at *4 (finding that an expert who specialized in  auto mechanics could issue opinions derived from a basic level of specialized knowledge in that field, even though he was not qualified to perform service work on RVs).

In sum, based on Grismer's 24 years of experience in inspecting RVs in his work through PJG Consulting and Appraisal, and his specialized knowledge in the field of auto mechanics, I CONCLUDE, and will recommend accordingly, that Grismer is qualified to render his expert opinions about the "house" portion of the Subject RV in the instant case.

### C. Grismer's Opinions About the Valuation of the Subject RV

Allied also argues that Grismer is not qualified to render his expert opinions about the

valuation of the Subject RV and that his opinions concerning valuation of the Subject RV lack reliability.  More specifically, Allied attacks Grismer for failing to take the Subject RV to a dealership to have it appraised, for using present-value guides in his appraisal, and for performing the opinion in accordance with the Uniform Standards for Automobile Appraiser Procedure ("USAAP"), which Allied contends Grismer admitted do not apply to RVs.  (DE 32 at 9-10).

Here, Grismer's credentials include that in 2004, he became a certified member of the International Automobile Appraisers Association, and that in 2008, he became certified in the USAAP.  (DE 47-3 at 1-2).  While Allied contends that Grismer admitted in his deposition that the USAAP do not apply to RVs, that is not an accurate summary of his testimony.  Rather, Grismer simply testified that the USAAP do not provide a separate procedure for RVs.  (*See* DE 47-2 at 144-45 (when asked whether USAAP has "any procedure for recreational vehicles," Grismer replied, "Specifically them, no.  They don't separate them.")).  In his response brief, Kuberski specifically represents that the USAAP include RVs (DE 47 at 8), a point which Allied does not contest in its reply brief.

Furthermore, Kuberski emphasizes that in Grismer's 24 years as the sole employee and owner of PJG Consulting and Appraisal, Grismer performed "inspections *and appraisals*" and the reports he issued included "current market valuations" of vehicles.  (DE 47-4 at 3; *see also* DE 33-5 at 9 ("I'm paid to do an appraisal and file a report[.]")).  As stated earlier, "genuine expertise may be based on experience or training."  *Conn*, 297 F.3d at 556 (citing *Tyrus v. Urban Search Mgmt.*, 102 F.3d 156, 263 (7th Cir. 1996)).

Allied also challenges the methodology employed by Grismer in issuing his valuation

opinion on the Subject RV.  Allied contends that Grismer's valuation is "simply a guess as to

what he believes the value should have been at the time of sale."  (DE 32 at 9).  Allied also takes

issue with Grismer's comment at his deposition that the Subject RV is "junk with the exception

of the drive train and cabin chassis."  (DE 32 (citing DE 33-5 at 14)).  Allied cites several cases

for the premise that an opinion that a product is "worthless" or "salvage" is inadequate and that

any jury verdict based on such would be the result of speculation and conjecture.  (DE 32 at 10-

12 (citing *Armstrong v. Mazda Motor of Am., Inc.*, 33 So. 3d 1252 (Ala. Cir. App. 2009); *Razor

v. Hyundai Motor Am.*, 854 N.E.2d 607 (Ill. Sup. Ct. 2006))).

Allied, however, is seizing on just a portion of Grismer's testimony at his deposition, but

that is not his entire opinion on the Subject RV's valuation.  Rather, Grismer more specifically

wrote in his report:

> Having inspected this vehicle and reviewed its service history, it is
> my opinion that the value of this vehicle was below the Original
> Purchase Price at time of Retail Sale, by 80 percent.  Sale Price
> $96,000.00.  Actual Value at time of Retail Sale/Purchase, due to
> diminished value appraisal $19,200.00.

(DE 47-5 at 10).  Grismer represents in his report that his appraisal was prepared in conformity

with the USAAP.  (DE 47-5 at 11).  Moreover, in the cases that Allied cites, it was *the plaintiff*

who testified that the vehicle had no value to him or her, rather than a proffered expert witness

with 24 years of experience in performing inspections and appraisals.  *See Armstrong*, 33 So. 3d

at 1255; *Razor*, 854 N.E.2d at 626.  As such, the cases cited by Allied are readily distinguishable

from the instant circumstances.

Ultimately, Allied's challenge to Grismer's opinions relating to the valuation of the

Subject RV attacks the substance of his conclusions rather than the reliability of the

13

methodology he used, and the former (unlike the latter) is something for the jury to consider. *See Smith*, 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact . . . ."). Allied will have ample opportunity to test the accuracy of Grismer's valuation opinions through the traditional methods at trial, such as vigorous cross-examination, the presentation of contrary evidence, and careful instructions on the burden of proof. *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596); *Tober v. Graco Children's Prods., Inc.*, No. 1:02-CV-1682-LJM-WTL, 2004 WL 1987239, at *11 (S.D. Ind. July 28, 2004). Accordingly, I find that Grismer's proposed testimony on the valuation of the Subject RV is admissible and will recommend that Allied's motion to bar Grismer's testimony be DENIED.

## IV. KUBERSKI'S MOTION TO EXCLUDE HAAS'S TESTIMONY

Kuberski, in turn, seeks to exclude the opinions of Haas, Allied's expert, on two different grounds. First, Kuberski contends that at Haas's deposition on February 14, 2017—that is, after the January 23, 2017, deadline for any supplements to expert disclosures—Haas rendered new opinions and announced new expert experience that were not included in his written report. Kuberski argues that as a consequence, Allied's newly-disclosed expert evidence must be automatically excluded pursuant to Rule 37(c)(1). Second, Kuberski asserts that Haas's expert opinions are not reliable because Haas did not disclose any principles, methods, or analysis for the opinions he expressed. For the following reasons, I fined that Kuberski's arguments warrant exclusion of just one portion of Haas's opinions.

### A. Haas's Experience and Credentials

Although Kuberski does not challenge Haas's qualifications to render his expert

opinions, the Court will briefly summarize Haas's experience and credentials to complete the record: Haas has a bachelor's degree in industrial technology from Eastern Michigan University and an associate's degree in machine shop from Washtenaw Community College. (DE 46-1 at 1). For the last 24 years, Haas has served as the R&D Engineering Manager for Fleetwood RV, Inc., performing, among other things, structural and design analysis, inspections, and troubleshooting production problems. (DE 46-1 at 1). Prior to working for Fleetwood RV, Inc., Haas worked nine years as an engineer for the systems engineering and test department of Martin Marietta Astronautics Group, and before that, he worked two years as an engineer in advanced research and development for Kawasaki Motors Corporation, USA. (DE 46-1 at 1). Haas has completed numerous certification training programs; was a certified specialist automotive mechanic from 1977-1985; and since 2003, he has been a member of the Recreational Vehicle Industry Association. (DE 46-1 at 2).

### B. Haas's "Newly-Disclosed" Opinions and Experience

Kuberski first argues that Haas disclosed new opinions and experience during his deposition on February 14, 2017, that were not included in his expert report issued on January 9, 2017. Kuberski contends that this newly-disclosed evidence must be excluded under Rule 37(c)(1). In response, Haas argues that his purportedly newly-disclosed opinions merely augment the opinions in his expert report and rebut certain previously undisclosed opinions that Grismer gave at his deposition 11 days earlier, on February 3, 2017.

1. Applicable Law

If a party wants to introduce an expert opinion at trial, the party must give the other party notice pursuant to Rule 26(a)(2). Fed. R. Civ. P. 26(a)(2). The expert disclosure must include

the identity of the expert, and if issuing a written report, such report must contain, among other

things: "(i) a complete statement of all opinions the witness will express and the basis and

reasons for them; [and] (ii) the facts or data considered by the witness in forming them[.]" Fed.

R. Civ. P. 26(a)(2)(B). A party must make the expert disclosures "at the times and in the

sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party must also supplement its

expert disclosures when required under Rule 26(e). Fed. R. Civ. P. 26(a)(2)(E).

If a party fails to provide the expert identifications and disclosures in accordance with

Rule 26(a) and (e), exclusion of the non-disclosed evidence is automatic and mandatory, unless

the non-disclosure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see David

v. Caterpillar, Inc.*, 324 F.3d 851, 856 (7th Cir. 2003). In determining whether an untimely

disclosure is harmless, a court considers the following factors: "(1) the prejudice or surprise to

the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice;

(3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not

disclosing the evidence at an earlier date." *David*, 324 F.3d at 857 (citations omitted); *see also

Meinert v. Praxair*, No. 2:12-cv-92, 2016 WL 6947023, at *3 (N.D. Ind. Nov. 28, 2016) (citation

omitted).

2. <u>Description of the Purported Newly-Disclosed Evidence</u>

Here, on August 8, 2016, Kuberski identified Grismer as its expert and disclosed

Grismer's expert report to Allied. (DE 35 at 2). In turn, on January 9, 2017, after being afforded

several extensions, Allied identified Haas as its expert and disclosed Haas's expert report to

Kuberski. (DE 35 at 2). The date for any supplements to the expert disclosures passed on

January 23, 2017, without the parties supplementing their respective expert reports. (DE 35 at

2).  Allied deposed Grismer on February 3, 2017 (DE 33-5), and Kuberski deposed Haas 11 days later, on February 14, 2017 (DE 35-2).

At his deposition, Haas testified at the outset that all of his opinions were already included in his written report—other than those opinions he might provide in response to Kuberski's attorney's questions during the deposition—and that there were no changes or additions.  (DE 35-2 at 6-7).  Haas also testified that his curriculum vitae ("CV") was accurate.  (DE 35-2 at 17).  Kuberski contends that despite this testimony, Haas disclosed new opinions and experience during his deposition on February 14, 2017—that is, *after* the deadline set by this Court for any supplemental expert disclosures.

More particularly, Kuberski contends that Haas gave the following new opinions during his deposition:  (1) the slide-out problems complained of by Kuberski were caused by Kuberski's extending the slide outs without the leveling jacks being down (DE 35-2 at 8); (2) two worn front tires that Kuberski allegedly failed to maintain caused the vibration and loosening of parts that Kuberski complained of, and Kuberski's failure to get an alignment on the Subject RV caused the vibration and shimmy (DE 35-2 at 12-15, 22);[4] (3) Kuberski should have used a water pressure regulator before hooking up the Subject RV to city water and the failure to do so caused the water leaks he complained of (DE 35-2 at 23); and (4) the generator stalling that Kuberski complained of was because the generator was designed to stop working when the fuel level drops to a certain level (DE 35-2 at 26).

In response, Allied argues that Haas's deposition testimony on these topics was merely

---

[4] Kuberski also contends that Haas disclosed at his deposition for the first time his alleged experience in "tire engineering" that was not included in his CV.  (DE 35-2 at 22).

an elaboration on his expert opinions in his report, or was in response to revelations made by

Grismer at his February 3, 2017, deposition that were not included in Grismer's August 8, 2016,

expert report.  The Court will discuss each of Haas's purportedly new opinions in turn.

> 3.  Haas's Opinion That Kuberski's Failure to Level the Subject RV Caused the Slide-Out Problems

Grismer's report states that the main slide out is defective and "drags across the floor and

marks the floor covering."  (DE 47-5 at 9).  In contrast, Haas's report reflects that the slide outs

were "tested repeatedly and operated normally," that "no abnormal or grinding noises were

noted," and that "both slide outs extended and retracted as expected."  (DE 35-3 at 3, 8, 12, 21).

At his deposition, Grismer testified that "the main slide out is not leveled and it's not

adjusted properly."  (DE 46-7 at 2; *see also* DE 46-7 at 4-5).  Grismer testified that it was

Kuberski who operated the slide outs during the inspection, and when asked what Kuberski did

to operate the slide outs, Grismer responded:

> Ensured the parking brake was down, I'm pretty sure the engine
> was running at that time, used the control panel wall switches and
> ran the unit out.  Went outside and inspected the outside of the
> unit.  Later on during the day when we took it for a road test, he
> retracted the slide out units and drove the vehicle.

(DE 46-7 at 3).

At Haas's deposition 11 days later, Haas noted that there was no indication that Kuberski

had extended the leveling jacks or performed the leveling procedure before operating the slide

outs during Grismer's inspection.  (DE 46-7 at 2-5).  Haas testified that a failure to extend the

leveling jacks and perform the leveling procedure before operating the slide outs "racks and

bends the slide-outs" and "can also damage them."  (DE 35-2 at 8).  Haas elaborated on that

point:

> I can create a case that would say that's what caused this
> originally.  Also overloading the slide-outs themselves.
> . . . .
> Well, when you don't take and put the jacks down like the owner's
> manual describes, very detailed, you can twist the whole
> motorhome itself, cause the slide-outs to jam.  You can break off
> pieces of trim and cause witness marks underneath from the
> rollers.

(DE 35-2 at 8-9).

Grismer now argues that Haas gave new deposition testimony about the slide outs that contradicts his opinions given in his written report.  In response, Allied argues that Haas's deposition testimony was in rebuttal to Grismer's deposition testimony that the main slide out was not leveled or adjusted properly.

Having reviewed the parties' arguments and the evidence, the Court views Haas's deposition testimony as rebuttal to Grismer's deposition testimony about the operation of the slide outs.  Haas's report stating that the slide outs operated normally during his inspection does not contradict his later deposition testimony that a failure to put the jacks down and perform the leveling procedure prior to operating the slide outs can damage an RV, as such testimony was in response to Grismer's deposition testimony that the main slide out "is not leveled and it's not adjusted properly."  (DE 46-7 at 2; *see also* DE 46-7 at 4-5).  Consequently, I will recommend that the motion to exclude Haas's testimony be DENIED with respect to Haas's testimony that Kuberski's failure to level the Subject RV caused the slide-out problems.

4.  Haas's Opinion That Two Worn Tires and Kuberski's Failure to Obtain an Alignment Caused the Vibration, Loosening of Parts, and Shimmy

Grismer's report states that the "dash assembly and entire right front wall area began rattling and shaking" at 25 miles per hour, that the "dash panel visible jumps up and down," and

that "[a] severe vibration is felt through the seats, steering wheel, wall and floor while driving." (DE 47-5 at 8). Grismer's report also notes an invoice for the replacement of two front tires that were worn out on the inside tread to the extent that the steel belts were exposed (DE 47-5 at 6), though the report does not offer any opinion about the worn tires.

Haas's report notes a "slight rattle" in the front passenger side wall, but indicated that "[r]epairs to the fasteners in the dash assembly . . . would significantly reduce this issue." (DE 35-3 at 5). Haas's report also indicates that Kuberski's traveling off road to the storage location "very likely caused or contributed to the present condition of the dash . . . ." (DE 35-3 at 18).

At his deposition, Grismer was asked whether there was any relationship between the tires and Kuberski's various complaints, and Grismer simply responded: "No." (DE 46-10 at 2). At Haas's deposition 11 days later, Haas testified that the two worn front tires and Kuberski's failure to have an alignment performed caused the vibration and loosening of parts throughout the Subject RV. (DE 35-2 at 18-20, 22). Haas further testified that he reached this conclusion "[w]hen [he] saw the picture of the tire[,]" which was prior to his first inspection and prior to writing his expert report. (DE 35-2 at 19). Haas admitted, however, that he failed to mention this opinion in his written report. (DE 35-2 at 20). Haas now argues that his testimony was in rebuttal to Grismer's deposition testimony denying any causal effects of the worn tires. But Kuberski argues that Haas's testimony contradicts, rather than elaborates on, his written report.

This time, the Court agrees with Kuberski. Haas's testimony concerning the two worn tires and the failure to obtain an alignment is not in rebuttal to Grismer's deposition testimony, as Grismer did not raise the worn tires in his written report. Rather, when asked about the tires at his deposition, Grismer simply denied any connection between the tires and the vibration.

20

Thus, Grismer did not raise a new opinion that necessitated rebuttal testimony on this point. More significantly, Haas admitted that he formed his opinion about the two worn tires *before* he ever completed his inspection and issued his written report, yet he failed to include the opinion in his expert report. Thus, it is Haas, not Grismer, who should have included the opinion about the two worn tires in his expert report.

As explained earlier, exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1), unless such non-disclosure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Allied does not offer any argument that its failure to disclose Haas's opinion about the two worn tires and the failure to obtain an alignment was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). As such, exclusion of the undisclosed opinions is automatic and mandatory. Consequently, I will recommend that Kuberski's motion to exclude be GRANTED as to Haas's opinion testimony that the two worn tires and a failure to obtain an alignment caused the vibration and shimmy.[5]

5. Haas's Opinion That Failing to Use a Water Pressure Regulator Can Cause Water Leaks

Grismer's report notes water stains and dried water patterns by the left side bedroom window and under the mattress, which he stated indicates past water leakage. (DE 47-5 at 9.) In contrast, Haas's report states that there were no water marks in or around the affected areas, and

---

[5] Kuberski also argues that Haas disclosed for the first time during his deposition his alleged experience in "tire engineering" (DE 35 at 10; DE 51 at 4-5), which Kuberski contends was not included in his CV. While Haas is not a tire engineer, his CV does include certification and training from a Michelin Tire and Training Seminar, and he has more than 24 years working as an engineering manager in the RV industry. Pointedly, this is not a tire design defect or failed tire case, and thus, Kuberski's challenge to Haas's qualifications to render his opinion that the two worn tires caused the vibration and loosening of parts is unpersuasive. In any event, this challenge to Haas's credentials concerning the tires is moot, as I am recommending that Haas's opinion concerning the two worn tires be excluded on other grounds—that is, Haas's failure to timely disclose the opinion.

that if there had been any water leaks, visible marks from water leakage would have been evident.  (DE 35-3 at 12, 16, 18).

At his deposition, Haas testified that he did not see a water pressure regulator or a receipt for such in the Subject RV during the inspection, and that failing to use a water pressure regulator when hooking up an RV to city water may cause water leaks.  (DE 35-3 at 23-25). Kuberski seeks to exclude this testimony, asserting that it contradicts Haas's written report finding that there was no evidence of water leaks.

The Court views Haas's deposition testimony concerning water leaks to be elaborating on, rather than contradicting, his opinions concerning the water leaks in his written report. Haas's testimony was in response to Kuberski's counsel asking Haas about the plumbing on the Subject RV and the water test.  (DE 35-2 at 23-24).  This portion of Haas's deposition testimony will be helpful to a jury to explain how the plumbing system operates in an RV, and it does not contradict Haas's observations in his written report that he saw no actual evidence of water leaks.  Therefore, I will recommend that Kuberski's motion to exclude be DENIED with respect to Haas's testimony concerning use of a water pressure regulator—that is, that a failure to use a water pressure regulator may result in water leaks.

### 6.  Haas's Opinion That the Generator Is Designed to Stop Working When the Fuel Level Drops to a Certain Level

Grismer's report observes that the generator was started, ran for 30 seconds, and then stalled out.  (DE 47-5 at 8).  The report further states that the generator was restarted but that it stalled out again after one mile.  (DE 47-5 at 8).  Haas's report reflects that the generator's battery was dead upon his initial inspection because the Subject RV had been sitting dormant for several months.  (DE 35-4).  However, once the batteries were recharged by the lengthy test

drive, the generator was started, operated, and remained operational for the balance of the inspection, which took six more hours. (DE 35-3 at 4). Haas's report further indicates that the generator was observed to operate as designed with no problems noted, and that with the generator running, Haas was able to operate all of the components related to the Subject RV's electrical system. (DE 35-3 at 4).

At his deposition, Grismer was asked whether he had reached a conclusion concerning whether the generator was defective, and he responded: "Well, something is defective. It's kind of a lump sum situation that the generator wasn't working, therefore, something is defective." (DE 46-12 at 3). When asked what he meant by "lump sum," Grismer elaborated:

> Well, it could be a fuel line problem, it could be an overloaded generator that is getting a signal that there is just too much going on so it shuts itself off. It could have been a self-protective situation. I don't really know. All I know is what I observed.

(DE 46-12 at 3).

At Haas's deposition, Haas testified that the fuel tank of the Subject RV was only one-quarter full in both August 2016 and December 2016 because the RV had not been driven. (DE 35-2 at 26-27). Haas then testified that the generator is designed not to run when the gas tank is only one-quarter full. (DE 35-2 at 27-28). Haas then explained the mechanics of why that is so, commenting that this feature is "basically an RV standard" that anyone with expertise in RVs would know. (DE 35-2 at 27-28). In short, Haas testified that the generator is designed to shut off when the fuel supply is low, so that when the generator is running in a remote location, there is still enough fuel reserved in the gas tank to drive the RV to civilization to refuel after the generator stops. (DE 35-2 at 27).

Again, Kuberski argues that Haas's testimony about the cause of the generator stalling

23

and the design of the generator directly contradicts Haas's report, which states that the generator operated as designed without any observable problems.  The Court disagrees.  Haas's deposition testimony elaborates on his expert report and directly rebuts Grismer's deposition testimony that the generator's stopping meant that "something is defective."  (DE 46-12 at 3).  Therefore, I will recommend that Kuberski's motion to exclude be DENIED with respect to Haas's testimony about the generator and its design.

### C.  Haas's Opinions Are Sufficiently Reliable

Kuberski also challenges the reliability of Haas's expert opinions in their entirety, asserting that Haas's opinions are inadmissible "because he cannot establish that the testimony is the product of reliable principles and methods and the expert has reliably applied the principles and methods to the facts of the case."  (DE 35 at 10-11).  Kuberski, in short, contends that Haas's opinions are "conclusory statements based upon mere assumptions and speculation." (DE 35 at 11).

Kuberski points to the following opinions offered by Haas as examples of his purported unreliable testimony:  (1) the loose bolts and dashboard were possibly caused by traveling off road to the Subject RV's remote storage location; (2) the slide-out seals were working properly because there were no signs of water intrusion, despite that the Subject RV sat outside for several months exposed to the elements, including hurricane conditions; (3) the leak on the front leveling jack was not an actual leak, but merely an accumulation of oil deposited on the shaft of the jack during operation; (4) there were no significant water leaks because there were no signs of water intrusion, even though the water system was not tested; (5) the nicks and scratches were probably caused by Kuberski's normal use; (6) the Subject RV compares favorably with other

24

similar Fleetwood units of the same vintage and has not suffered diminution in value, other than ordinary wear and tear; and (7) a tire and a bent shock absorber could cause a wall to separate from the floor.  (DE 35 at 11 (citing DE 35-3 at 17-18; DE 35-2 at 18)).  Kuberski argues that Haas formed these opinions by "look[ing]" and "listen[ing]," but that he never explained the foundation, principles, or methods that were applied to arrive at the opinions.  (DE 35 at 12).

But as Allied points out, Haas based his opinions on first-hand observation and analysis, and he wrote a 19-page report documenting his observations and opinions with much detail.  (DE 35-3).  Haas personally inspected the Subject RV, which included testing various components and a lengthy test drive, and the inspection occurred over a period of two days and totaled about 13 hours.  (DE 46 at 12).  "Personal observation is deemed often to be the most reliable source of information.  Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called general truths derived from . . . specialized experience."  *Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10-CV-365, 2016 WL 1165683, at *6 (N.D. Ind. Mar. 25, 2016) (alteration in original) (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1112 (N.D. Ill. 2005)); *see Kumho Tire Co., Ltd.*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").  In fact, in advancing this argument, Kuberski is apparently ignoring that his own expert, Grismer, *also* based his expert opinions, to a significant degree, on his own personal observations through an inspection of the Subject RV.

Therefore, Kuberski's final argument challenging the reliability of the entirety of Haas's expert opinions is unpersuasive.  Consequently, I will recommend that Kuberski's motion to exclude Haas's expert opinions be GRANTED only with respect to Haas's newly-disclosed

opinion that the two worn tires and a failure to obtain an alignment caused the vibration and shimmy of the Subject RV; otherwise, I will recommend that Kuberski's motion be DENIED.

## V.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Allied's Motion to Bar Plaintiff's Expert (DE 31) be DENIED, and that Kuberski's Motion to Exclude Douglas Haas' Testimony (DE 34) be GRANTED IN PART and DENIED IN PART in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See Brokaw v. Brokaw*, 128 F. App'x 527, 530 (7th Cir. 2005); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO ORDERED.

Entered this 7th day of November 2017.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge